OPINION of the Court, by
Judge Log ax.
In this case ⅛*5 best and principal question presented for the determination of the court, is as to the validity of the following entry, viz :
« December 21st, 1782 — /Thomas Holt and Samuel ⅝ . ;, . _ M’Millen, as tenants in common, enter 5000 acres of land on a treasury warrant, No. &c. on the south fork creek, about two miles above the forks ; begin-: ning at a large red-oak, white-oak and black-oak growing together at the roots, and a buckeye marked S. m. ; from thence E. 900 poles ; thence south at right angles as far as to include the quantity.”
The general notoriety of Mill creek, and the south fork of that stream, by that particular name, at the time the entry of the appellees was made, admits of no doubt, It is, however, contended that another creek, about SO 0r 40 miles distant, equally answers the call of this cn-⅜/. That creek is proven by several witnesses to have been knowm by the same name. It is a water of the north fork of Licking. The one in question is a water of the south foi’k. And either, perhaps, w ith this description, might he sufficiently designated. Of the latter, however, we have no doubt. It was almost as generally know n as Licking itself, to the people of the neighboring stations ; and indeed had obtained a general reputation in different parts of the country, ow ing to several expeditions against the Indians having crossed and encamped upon it.
But it forked, and the forks were nearly of the same size. One was known well by the name of the south fork : it was a south fork by nature — it was so by reputation. ■
Mill creek of south Licking is larger than the other, and although this circumstance in general might noite *151 important, yet the entry calling to begin two miles up a fork thereof, may render the comparison not improper. it was more convenient to the people of the country— more within the search and exploring of hunters and locators — being within 10, 15 and 20 miles of several settlements where the inhabitants had obtained some knowledge of its situation. The other creek was more distant, intercepted by main Licking, and obscure in a comparative view.
Again, it did not combine the additional description of the call for the soutli fork, as the other was well known to do. And although either creek might from the gift of nature present such forks, yet as one had by common reputation become notorious, and the other not even known to have a southern fork of that size to any or hut very few, it was natural according to the ordinary course of things that it should first arrest and satisfy the mind of a subsequent locator; and therefore ought to be received as a good call of general description.
Having selected the, creek, it remains next to examine the more special and locatiye call, in order to ascertain the precise situation of the land. Mont two miles above the forks, the object of precision, the cluster of oak trees, was represented to stand, singled out and marked particularly from two at least of the different species of that wood growing together at the roots. But the place was rendered still more certain and unequivocal by adding the buckeye marked with S. M. Find the trees, and the spot was identified and known. The arguments withrespect to the doubts which might be entertained in the solution of thé question, whether from the face of the entry three or only two of the oaks would have been understood as growing from the same visible roots, receives a satisfactory ans wer as to the meaning of the locator in this doubtful expression, according to grammatical con-, struction, by an appeal to the trees themselves: for whether there were two or three growing from one root, they were alike easily found, and when found, whether there be two or three of the trees thus situated, and the other part of the description remaining there, the meaning of the locator would have been satisfactorily attained, although he should be convicted of a grammatical inaccuracy.
These trees stood within a few poles of the creek — 716 poles on a direct line, and 947 poles w ith its meanders *152 from the forks. The creek furnished the guide, and they were not of a nature which discouraged examination, or required it very minutely and with great vigilance to be made. As far as their group was clearly perceivable, and their species distinguishable from other wood, they would certainly have caught and satisfied the eye, so far at.least as. to have induced a more particular search. The distance imports to be but directory to find the objects and place: they were not too remote to have eluded the search and diligence of reasonable inquiry from the direction given.
It was assumed as a fact in the argument, that the letters on the tree could not with convenience have been seen upon passing up and down the creek; and the conclusion is from thence inferred, that the tree, without perceiving the letters as descriptive of it, would not have invited search. The argument would certainly be entitled to great weight, if not conclusive, if we suppose the letters, which in their nature were more obscure and hidden, as essential in the first place to find the trees; instead oflooking out for such trees, and then identifying and proving them by the letters. This entry received the same construction in the case of Neall vs. Holt, &c. (Pr. Dec. 13.) As to the objection that there is no proof the letters were cut on the buckeye before the making of the entry, although this fact is not positively proven, yet the evidence is satisfactory to establish the fact. In the year 1783, the tree was seen marked with these letters by a witness, who supposed from their appearance that they had been cut the preceding year. This proof, and the calling of the entry for such trees thus marked, and which corresponds as in this cause, can leave no room for a rational doubt.
The point of beginning being fixed, course and distance is given, from which and the survey as executed it is evident that the claim of the appellants is thereby comprehended ; and as they rely on their elder patent only in this contest, the decree of the court below must be affirmed with costs.